Case number 23-7157. Catherine Jones appellant versus Washington and Republican Area Pension Authority. Ms. Rucker for the appellant. Mr. Gus for the appellate. Morning, counsel. Good morning, your honors. Ms. Rucker, please proceed when you're ready. Thank you very much, your honors. May I please support Donna Rucker on behalf of Catherine Jones, the appellant in this matter. Your honors, we believe that the district court erred when it determined that Ms. Jones' Title VII case could not go forward based upon a settlement agreement that had been negotiated and brought on behalf of Ms. Jones by her union. And we assert this contention for four basic reasons. Specifically, the lower court's analysis of the settlement agreement was predicated on a misreading of the contents of that agreement. And the second point is that the court read into the settlement agreement language that was simply not there. Third, the plain language of the settlement agreement clearly identifies for the court what the parties intended in terms of what claims were being released at that particular time. Specifically, the language in the agreement points out that Ms. Catherine Jones is going to withdraw and it specifies any and all outstanding contract claims. That is significant in this particular case. And a second place within that settlement agreement, it also indicates that the parties agree that this agreement satisfies all claims. But it doesn't stop there. It specifically says all claims of the grievances. And so in that respect, the court erred in determining that there was some language on the face of the actual settlement agreement that suggests that Ms. Jones' Title VII claim was also a part of what was being released at the time. What kind of language would have been, in your view, required to also waive a Title VII? Well, thank you for that question, Judge. I have done many settlement agreements with this particular appellee and there's specifically language that usually sits in that talks about dismissing and releasing all claims that you can imagine. Title VII, age discrimination and employment, Workers' Compensation Act. And so in this case, we know from this record that Ms. Jones had filed her court case prior to the settlement that occurred in December 2021. So it was existing for approximately six months at the time. The absence of any specific language indicating that there's going to be a waiver of a Title VII claim or any efforts to obtain a dismissal of this case or release of this case as a result of that settlement agreement did not occur. It's interesting to me that you said you've been involved in cases in which a broader language was used. So in those situations, it's an agreement between the union and the employer, right? That is correct. But I'm not speaking about involvement in cases with the union and the employer. I'm talking about cases of Title VII. If you represent an individual, they bring a Title VII claim, then you can enter into a settlement agreement with employer. I'm actually saying something different. But if there's a collective bargaining agreement negotiation underway and there is an expectation that this settlement is going to release all claims, then there is an opportunity to reach out to the Title VII attorney and indicate that this is a right and entitlement that's going to be released. Are you aware? Does your client agree? And that did not occur in this particular case. And what happens in that situation? So you represent the union. You come into play because you represent the individual whose interests are at stake in the negotiation between the union and the employer. And then you're giving, I take it that's what's going on. And you represent the individual employee. Well, I represent the individual in the Title VII case. The union process goes on unbeknownst to me and without my involvement or my knowledge, which is the case in this case. So in this particular case, what we're saying is the parties identified specifically the two grievances that were going to be resolved as a result of this settlement agreement. It says it at two different places. Right. I think there's force to that argument that you've made. I guess what I'm wondering is in a situation in which you represent the individual Title VII claimant and there's also a collective bargaining, a claim out of the collective bargaining agreement that's brought by the union. And it sounds to me like you're saying in that context, there can also be a settlement of the Title VII claim. If it's contemplated, that is correct. And how would that, so in that situation, the individual's lawyer in the Title VII claim, which it sounds like would be you, would be notified and then you would participate in the negotiations and you would become a party to the settlement agreement? Or I would review, if I'm aware, the settlement agreement to make sure that it contains language that involves. So I can speak better to the reverse of that, where when we're settling cases and you want to make sure something is not included, that is where it comes in, in terms of me reviewing to say this doesn't involve my case. So yes, you do have the opportunity to put language in. There can be language provided. LOMADA, because it was aware of this particular case, the appellee in this case, could have had language that simply indicated that it's a dismissal of all claims. And speaking of which, this is why we also indicate here that the court erred in terms of not understanding the implications of the Supreme Court and Alexandra, where the court particularly provided that it is wholly possible and permissible for a grievance to go forward. Can I ask the following question? So if in this situation, the agreement had included the language that you say would have been necessary, any and all claims, you pick the language you want, whatever the language it is that would cover a Title VII claim. But the way that happened is the union just entered into a negotiation with the employer and executed that agreement. And the attorney for the Title VII claimant was never notified about it. The individual, I mean, maybe they've got something that they signed off on that said, you know, you accept receipts of this agreement, they do that, but there's no involvement of them in the settlement process. Would you say then in that situation, the Title VII claim has been settled? If I understand you correctly, Chief Judge, if you in fact have written in that agreement that there is a release of the Title VII claims, that this settlement is going to resolve, for example, as the language is in Kester, all claims, or as it was in Pigford, where it was very clear that you were going to be releasing all claims, all entitlements. That's the point that I'm making when I point out that you're reading language that's not in this particular agreement. But if you had that language, but it was only the union that did that. So the union just decided that it's going to settle the employee's Title VII claims. Well, I'm not sure that was the intent here. I'm not saying that was the intent. I'm just trying to figure out, in a hypothetical situation, if the language that you say would have covered Title VII claims is in the letter of the agreement. So it says any and all claims, including Title VII claims. Suppose it just says make it as explicit as possible. Yes. But the attorney for the individual is never notified about it. It's just an agreement between the union and the employer, and the union purports to settle the individual's Title VII claims. Would you say that at that point, the Title VII claims have been settled? No. I would also dispute it, but on different grounds in that instance, because you're settling a claim that belongs to a matter for an attorney who has not been notified or involved in the release of those claims. That would be the grounds upon which I would challenge that. But the language that talks about, in this particular case, why the district court decided to grant summary judgment, speaking to that, in this particular case, what we find troubling is the fact that the court seems to rest upon the fact that there were some similarities, for example, to what was brought forward in the collective bargaining agreement grievances and what was filed in the court. And that is wholly permissible, one addressing a contractual claim, the other addressing a statutory right in order to move forward, which is what the court stated in Alexander. And I just have one follow-up question along these lines, if I could, and then I'll stop. In your reply brief, there was a couple of instances in which you refer to the settlement agreement as a settlement agreement between Ms. Jones and WMATA. It's actually between the union, because the union brought the proceedings on behalf of Ms. Jones. There's also, with the courts pointing out, a need to point out that in terms of language in the actual document, we make a reference to say that the settlement agreement did contemplate, and it should, of course, by typo, be did not. So that's another example, correct. But even though, you know, we say things to Maurice, but I just want to make sure that the settlement agreement, you don't actually view the settlement agreement as being between Ms. Jones and WMATA? It was actually the union that negotiated the settlement agreement on behalf of Ms. Jones. Okay. Does Ms. Jones have any involvement in that process? Well, she is, she's notified of the terms of the settlement agreement, and she signed it. But in terms of an involvement in negotiating, because I was not a part of that, I certainly can't speak to that, but I do know that she had an understanding that whatever was being agreed to by the union on her behalf only addressed the two grievances that were specifically named and identified by matter number in the actual settlement agreement that was reached in that particular case. But did she actually sign the settlement agreement? I thought the settlement agreement was signed by the union. Your indulgence. WMATA. I think she signed something else that acknowledged. She signed an acknowledgement. You are correct. That is correct. Yes. And so we believe that the court errored in making this determination that the Title VII claims could not go forward because when you look at the plain language of the settlement agreement, it does not have any ambiguity. And when it's presented in that way, you must go by this plain statement there. Parties went through great challenges and extent to make sure it was identifying what was being released and reading anything. Otherwise, it's prejudicial. We believe this case should be remanded and that it should be presented for a trial on the merits specifically. And I see my time has expired with the court's permission. I could finish that sentence specifically because of the fact that when we filed our opposition to the appellee's motion for summary judgment, we indicated a very significant number of statement of material facts in dispute. And in its reply brief, that was not challenged, and therefore those disputed facts have been conceded. And so we clearly have material facts in dispute that should go forward and be presented to a trial on the merits. Thank you for Ms. Jones's opportunity to be heard today. No further questions. Thank you. You have a little time for rebuttal. Yes. Good morning, Your Honors. And may it please the court, Michael Gus, on behalf of the Guamata. This is not a case of whether the appellant was supposed to, well, let me start. The appellant focuses on the wrong issue here. This is a clear issue of a settlement agreement that disposed of all claims, including the Title VII claims. And I refer to the fact that the appellant's grievance, as well as her Title VII claims, was so closely, the facts were the same facts that the appellant had to have known and did know that she was settling not only her grievance, but she was also selling her Title VII claims based on the very plain language of the settlement agreement. It's the same facts, and the elements of the contract and statutory claim are the same here. Absolutely identical. But they're different claims. Different claims, but again. One arises under a contract and is handled through the union, and one is statutory. That is correct. And we can see that, Your Honor. But again, we pull it back to the actual language of the settlement agreement itself. What does all claims of the grievances mean? If we're looking at the facts, because what that language, I think it's very clear here, all claims of the grievance, and the grievances are these two. Put the emphasis on the word grievance. Why do you prevail? In going back to the fact that the facts or the allegations of her grievances, and the facts and allegations of her Title VII claim are exactly the same. I know one is talking about a grievance under the collective bargain agreement, and one is talking about a Title VII action. But again, if we're looking at what the facts underlying both of the causes of action, they are exactly the same. And so the appellant had to have known, I would say she did know, that when she signed the settlement agreement that was presented to her by the union, that she was also disposing of the Title VII action as well. Because again, the facts are the same, and she's asking pretty much for the same relief in both the grievances and the Title VII action. Saying all claims of the grievances just seems like an odd way to do that. If you read other typical release provisions, including ones that WMATA has executed, they would very naturally just say any and all claims arising out of the same conduct alleged in the grievances, or something to that effect. And isn't the absence of that at least enough to make this ambiguous? I would concede that, Your Honor. I work in the legal department, so I would have done this a lot differently than our labor department. But I would say there is coordination between labor and legal in terms of, you know, if labor will, and in this case, my colleague was contacted by labor before they were discussing this on whether this was going to, you know, satisfy all the claims, whether the Title VII claims and the labor claims. It is common for our labor department to do that because, again, it's also representing WMATA. And WMATA's interest is to dispose of all, if you have an appointment dispute, dispose of all of the cause of actions, including unpending Title VII action remaining out there. We don't want our employees to have two bites at the apple. Can I ask you, in that situation, so in this, in the standard situation, you just acknowledged that things could have been done differently, and I know your position is that this was legally the same thing, but could have been done differently. In the standard situation, if WMATA does what it wants to do for your representation just now, that it would like to have everything tied up in one fell swoop and resolved, which I can certainly understand from the employer's perspective why they have an interest in doing that, would the agreement be like this in that it's only the agreement itself on JA-1099 is only executed by WMATA and the union, or would there be a third signature block for the employee, probably counseled, to sign and become a party to the agreement, so the employee then knows that they're actually part of this, and when they talk to their lawyer, and they'd say, when it says any and all claims, that includes your Title VII claim, let's make sure we understand that. Would it have a third signature block, or would it not? Right, and that's a good question, Chief Judge. I would say that this doesn't come up often. You would think it does come up often, but it does not. You know, thinking practically, if this was a case that I have, just to make sure, I probably would have had a third signature block there, but this was a total, very unusual circumstance that surprisingly doesn't happen often, and I think because of that, I think we have to fall back to what the lower court was thinking, recall back to contract law, and look at this language, you know, and it's entirely including the facts of the case. How I interpret it, because going back, I know to the fact that the grievances in the Title VII facts, exactly the same, even the relief is the same. I think the district court, looking at that language, was fair to say that the allegations arising out of the grievance are exactly the same as the Title VII action, and with the absence of any other evidence indicating whether Ms. Jones knew that she was selling the Title VII action, absence of any other evidence in the record that whether she was asked if she knew that this settlement agreement between the union and the WMATA that included this language was also selling her Title VII action, I think it was more than appropriate for the lower courts to look at the language of the agreement, as well as D.C. law, and come to this conclusion, which I believe is a fair and right conclusion. Yes, you have anything further, counsel? Yeah, I do not, and so, and we'll reserve to the arguments made in my modest brief. Thank you, counsel. Ms. Rucker, we'll give you two minutes for rebuttal if you'd like to use it. Thank you very much, Janice. I appreciate that. Janice, with respect to what the appellee has presented here, I believe that it further enforces what was stated earlier. The fact that there is some kind of recommendation or suggestion that you have to imagine that Ms. Jones knew this, or you have to, you know, take it from the thinking of the court, this is exactly what we're not going to do under the law. We're going to look at the language of the settlement agreement, and when you do that, it is very clear that it's simply talking about two specific grievances. As you see, it has the specific matter numbers identified, and any time that there's some statement about resolving, it says the grievances, the contract grievances. It is not talking about Title VII. There is no need or reason to speculate. You've also heard here, based on what counsel has said, is that with respect to this particular agreement, it could have been more specific and more pronounced, and the reason that it was not is because the intent was not to release the Title VII claims. The other point that was made in the question that was asked by Judge Garcia is, wouldn't it clear that you would take whatever you're releasing statutorily, excuse me, contractually, and make sure that it also addresses statutorily? It does make sense, and again, we can't overlook the fact that the absence of that. We've heard from a police counsel that this was something that the legal looked at, and could have, and did understand that it was going to be the goal of trying to resolve everything with one, but what they were trying to resolve was accomplished, and that's the two grievances, and once again, we don't have any issue with respect to whether or not there are similarities in claims because of Alexander, and we submit to you that there are other matters. There's Nina Albert, who's identified very specifically as being a discriminator. There are 2018 claims that are identified in the complaint, so it's not simply that. I thank you. I see my time is up for the opportunity to address the court. Appreciate it. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Katsas; Garcia